ESTELLA M. MITCHELL, APPELLEE, V. DANIEL E. KAUFMAN,
APPELLANT.

FILED JANUARY 30, 1914. No. 17,541.

Death: PRESUMPTION OF DEATH: SUFFICIENCY OF EVIDENCE. The evi-
dence examined and its substance set out in the opinion, *held*
sufficient to establish the legal presumption of the death of plain-
tiff's father.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*H. M. Sinclair* and *W. D. Oldham,* for appellant.

*N. P. McDonald,* contra.

REESE, C. J.

Action to quiet title to lots 8 and 9, in block 2, of
Arendt's Second addition to the town of Elm Creek, in
Buffalo county. It is alleged in the petition that on the
7th day of December, 1893, the premises in dispute were
sold by the county treasurer of Buffalo county to W. C.
Campbell for the unpaid taxes of 1892, amounting to the
sum of $1.85; that Campbell afterwards assigned the cer-
tificate of purchase to Henry C. Andrews, to whom a treas-
urer's deed was issued on the 1st day of December, 1898,
and that through mesne conveyances from Andrews his in-
terest in the property is now held by defendant; that the
tax deed was void, and defendant has no rights thereun-
der. There is an allegation in the petition that on
the 25th day of November, 1902, the property was subse-
quently sold for delinquent taxes to George Arendt, but
no allegation is made in any of the pleadings that a deed
was ever issued upon such sale. The allegations of the
petition thus far seem to be admitted in the answer, ex-
cept as to the character of the treasurer's tax deed of
December 1, 1898. The petition further alleges that on
or about November 22, 1902, defendant's remote grantor

entered into the possession of the property, and he and his grantees, including defendant, have held possession ever since; that the premises have thereon a large livery barn, etc., the rental value of which is and has been $15 a month; that on the 17th day of November, 1902, and for a long time prior thereto, John F. Brown, the father of plaintiff, was the owner of the fee title of the property; that she is his only child and sole heir; that on the said day he disappeared from his home, and has not been heard from since, although diligent inquiries were made for him to learn his whereabouts, if still living, his absence continuing over 8 years, unheard of during all of said time by his family, friends and neighbors, and that therefore he is presumed to be dead; that in the month of April, 1908, the wife of Brown procured a divorce from him, and that she has no interest in the property, the title being alone in plaintiff; that defendant has no interest in the property, except that procured under the void tax deed of December 1, 1898. The prayer of the petition is: that John F. Brown may be adjudged to be dead, and plaintiff be decreed to be his sole heir at law; that an account be taken of the rents and profits of the premises while in possession of defendant and his grantors; that the same be set off against the taxes paid by them; and that an order be made for the payment of any amount due to either party, plaintiff's title quieted, and she be declared eititled to the possession of the property.

Defendant Kaufman answered in denial of the unadmitted averments of the petition; plea of statute of limitations; the allegation that the rental value of the premises did not exceed $5 a month, that he had placed permanent improvements upon the premises to the amount and value of $300; a denial of the death of Brown, or that plaintiff has any interest in the premises; the averment that Mary E. Brown conveyed her right and title to the property to L. May Arendt, through whom defendant claims, on the 22d day of November, 1902, releasing right of dower; prayer that said John F. Brown be made a party defendant, and defendant's title quieted. An answer

was filed by Mary E. Brown denying plaintiff's right to the property; but, as it is shown that she has died pending this appeal, the issues thereon presented need not be noticed. It also appears that defendant Kaufman has died pending the appeal, and the case against him has been revived in the name of the administrator of his estate. The plaintiff filed her reply, denying unadmitted averments of the answer, admitting that Mary E. Brown executed a quitclaim deed to L. May Arendt as alleged in defendant's answer, but alleging that the deed conveyed only her inchoate right of dower, and was void. A trial was had to the district court, which resulted in favor of plaintiff. Defendant appeals.

The brief of appellant contains no reference to the tax deed executed by the county treasurer December 1, 1898, and, as it must be conceded that the deed is void, it need not be further noticed, except to say that as early as February, 1894, it was held in *Larson v. Dickey*, 39 Neb. 463, that, "until the legislature shall provide for an official seal for county treasurers, no tax deed of any validity can be executed under the present revenue law." The law had not been changed at the time of the execution of the deed in question.

The only question presented by the appeal is as to the sufficiency of the evidence to raise the legal presumption of the death of John F. Brown, the holder of the legal title to the real estate, at the time of his unexpected disappearance from Elm Creek, the place of residence of himself and family at that time. Plaintiff is his daughter and only child. The one time wife of Brown has died. Sometime after the disappearance of Brown, his wife obtained an absolute divorce from him on the ground of desertion and failure to support, and she, if living, could have no interest in the property. There is no evidence of any rupture or disagreement in the family at or prior to the time of Brown's disappearance. When he had hired help in his livery business the employee slept in the barn. At the time under consideration, having no help, he slept in the barn, taking his meals at home with his family. On the

morning of November 17, 1902, he failed to go to his break-fast, and his daughter, plaintiff herein, went to the barn to call him, but he was not there. His bed, a team and wagon were also missing. Owing to a crippled and dis-figured hand, he could not write. In making investiga-tions about the barn, certain writings were found at his desk stating that he was leaving "to parts unknown," ex-onerating his family from wrong, and giving directions as to the disposition of the personal property, etc. About a week after that time an envelope was received from Kansas, through the mail, containing a post office money order. No letter accompanied the money order; but the words "my lodge dues" were written. Plaintiff took the money order, visited the officers of the two lodges to which he belonged, found that the unpaid dues amounted to the sum named in the order, and turned over the order in payment. If this remittance was from Brown, it is the last that was ever heard from him by his family. After his disappearance, it was ascertained that Mrs. Lopaz, a widow, residing in Elm Creek, was missing; that she dis-appeared on the same night of Brown's disappearance. She has never since been heard from. The supposition, and we think the presumption, is that she went with Brown, although there is no direct evidence that such is the fact. The writings found in the barn were not in Brown's hand-writing, as he could not write, and there is some slight evidence that the writing was by Mrs. Lopaz. There is some evidence that Brown has been seen in various parts of the country since his disappearance; but it is not con-vincing. He seems to have had a tender regard for his family, and his remittance for the payment of his lodge dues, if he did so remit, might be construed as showing, either a desire to protect them, or a purpose to return and perpetuate his insurance. It is shown that inquiries were made among his relatives; but none of them have ever heard from him. We therefore think that the deci-sion of the district court, finding that he was presumed to be dead, is sustained by sufficient evidence. As it is shown that since the taking of this appeal the mother of plaintiff

has departed this life, if Brown is deceased, the title to the property is in plaintiff as his sole heir.

Counsel for appellant have been diligent in their investigation and citation of cases, which incline more or less strongly to their contention; but we cannot see that they are decisive of this case. While it is true that Brown, or some one else, over his name, left writings, which he neither wrote nor signed, saying that he was "going to parts unknown," we find no declaration in any of the notes that he did not intend to return; but in one it was said, "I will send you a regular bill of sale" for one of the mares, and in another, it was said, "Anything I owe here I will pay as soon as possible." So we conclude that, even if the letters were written by his dictation, they do not show a determination never to return. He was not a fugitive from justice, for there is no evidence that he was charged or suspected of having committed any crime previous to his departure. It is shown that the woman, Mrs. Lopaz, was seen at Brown's barn on several occasions; but there is no proof of misconduct on their part or evidence of undue familiarity between them. She may have been there on legitimate business. The evidence seems to indicate that the parties left the village of Elm Creek together, yet it is largely a matter of inference arising from the disappearance of both on the same date. From a review of all the evidence presented, we are unable to say that the finding of the trial court, that the death of Brown was presumed, was wrong.

There is another feature of the case which is deemed worthy of notice. If from all the evidence the presumption of death has arisen, the property belongs to plaintiff by the law of descent, and she is entitled to it. Brown not being a party to this suit, if the conclusion as to the presumption of his death is wrong, and he is still living, his right to the property will not be destroyed by the decree; the only effect will be the interruption of the running of the statute of limitations in favor of defendant, who has no interest in or title to the property, and could not have until his adverse possession has ripened into a

title. That right not having accrued, the decree, while not establishing Brown's right, might, as an incident, inure to his benefit by reason of the failure of the completion of the statutory bar. As between plaintiff and Brown, her father, and their relative rights, the decree can have no effect, should he be alive, as he is not a party to the suit. As between plaintiff and the administrator of the estate of defendant, the decree will be effective in establishing plaintiff's right, subject to that of her father. In such case less weight and convincing evidence is required than where the property might be squandered and Brown's rights therein be lost. 2 Greenleaf, Evidence (16th ed.) sec. 278*h*.

The decree of the district court is

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.